UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

WILFREDO URBINA,

              *Plaintiff,*

     *-against-*

CITY OF NEW YORK et al.,

             *Defendants.*

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-6-16

14 Civ. 9870 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs Wilfredo Urbina, Dayshaun Scott, Wesley Lisby, Eddy Tejeda and Daniel Torres bring claims against the City of New York and several named and unnamed NYPD officers. All but Urbina have settled their claims, which arise from events that occurred on Elder Street in the South Bronx around 3:00 a.m. on Saturday, February 22, 2014. Briefly stated, the complaint alleges that the Plaintiffs had intended to spend the night at Tejeda's apartment, but upon their arrival they encountered a group of four Hispanic individuals who screamed racially derogatory, homophobic slurs and exhibited hostile and aggressive behavior. When the police arrived, they did not pursue the Hispanic individuals; instead they ordered Urbina and the others to leave the area. As Urbina walked down a nearby street, he was attacked by unknown individuals (presumably the four Hispanics) with a "machete type weapon" and suffered severe injuries to his hand, arm and leg.

    Urbina brings claims against the officers for placing him in "constructive custody" and then failing to protect him from physical and psychological injuries in violation of the Fourth and Fourteenth Amendments; 42 U.S.C. §§ 1983, 1985 and 1986; and related state-law provisions.

1

He brings claims against the City of New York premised on respondeat superior and a racially discriminatory policy or practice in violation of federal rights.

Urbina also seeks leave to amend the complaint to add claims premised on an allegedly unlawful search and use of excessive force.

Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(c). The Court GRANTS Defendants' motion to dismiss in full; and GRANTS Urbina leave to amend.

## BACKGROUND

On Saturday, February 22, 2014 at around 3:00 a.m., Urbina left an all-night party on St. Ann's Avenue in the Bronx with Scott, Lisby and Torres. Compl., Dkt. 1 ¶¶ 78-81. Torres, the designated driver, drove them to Tejeda's apartment at 1201 Elder Street, where the group intended to play and make music before "crashing" for the evening. *Id.* ¶¶ 81-83.

Upon arrival, they encountered three Hispanic males and one Hispanic female, who screamed racially derogatory, homophobic slurs; and exhibited hostile and aggressive body movements. *Id.* ¶¶ 94-99. At this point in the complaint's narrative, the police arrive. But the police officers "did not approach the screaming and aggressively acting group of Hispanic individuals." *Id.* ¶ 105. Instead, the officers focused on the newly arriving late night revelers. The complaint alleges that all this happened very quickly and that the Hispanic individuals left the scene. *Id.* ¶ 112.

Urbina was frisked by a male officer and given a summons for having an open container. *Id.* ¶¶ 110-11, 188. A female officer also later frisked Urbina. *Id.* ¶ 122. And when the group went up to Tejeda's apartment, the police followed them and told them to get out. *Id.* ¶¶ 129-46. Outside, the police arrested Torres (who was to drive Urbina home) and told Urbina to leave the

neighborhood. *Id.* ¶¶ 161-62. Urbina followed these instructions, but when he tried to walk in one direction, the police directed him to go in another direction. *Id.* ¶ 165.

According to the complaint, Urbina was trapped in hostile territory without a car (due to the police arrest of Torres), without a place to stay (due to the police directions to leave Tejeda's apartment), and forced to walk in a particular direction by the police. When walking as directed, Urbina was attacked by a person with a "machete type weapon," who struck Urbina numerous times, resulting in the loss of fingers on his left hand; cuts on his left palm, arm and leg; and also slicing on his jacket that "destroy[ed] the utility of the jacket as a garment." *Id.* ¶¶ 173-79.

## DISCUSSION

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). When assessing a motion to dismiss for failure to state a claim, the court accepts as true all of the factual allegations contained in the complaint and construes the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (internal quotation marks omitted). But the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The complaint has twelve claims. Claims 1, 2, 6 and 7 do not pertain to Urbina and are

dismissed. The remaining claims are considered below.

## I. Constructive Seizure or Custody (Claim 3)

Urbina alleges that the police conduct at the scene violated his Fourth and Fourteenth Amendment rights. He contends that the circumstances at the scene (the arrest of the designated driver, the eviction from Tejeda's apartment, the police direction to get out of the neighborhood, the order to walk in a specific direction) meant that Urbina was in "constructive custody" of the police, which imposed the duty to protect Urbina. He asserts that he was in the police's constructive custody when he was attacked, and that the constructive custody was the proximate cause of his injuries. Compl. ¶ 229. Urbina also suggests that the officers violated his right to intrastate travel by ordering him to walk in a certain direction. Pl. Opp. Mem., Dkt. 18 at 8.

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). To prevail in a § 1983 action, the plaintiff must prove that the defendant's unlawful actions were the proximate cause of his injuries. *Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002). "When there is an intervening act or omission that is extraordinary under the circumstances and is not foreseeable in the normal course of events it may break the causal chain of events and remove liability from an earlier acting defendant." *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (internal quotation marks omitted). "An intervening act must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's negligence as the legal cause." *Id.*

"A government intrusion on the right to travel will be upheld if the intrusion is deemed necessary to promote a compelling governmental interest"; "[t]here is no question that one of the

basic purposes of government is to secure domestic tranquility . . . which includes keeping public streets free from criminal activity." *Maxwell v. City of New York*, No. 93 cv 5834 (MBM), 1995 WL 244501, at *7 (S.D.N.Y. Apr. 27, 1995) (internal quotation marks omitted).

Urbina has not alleged a seizure or custody within the meaning of the Fourth Amendment. By his own admission, he left the area without any police supervision and considered himself free to buy food in a bodega and then either return to his home or Tejeda's apartment. Compl. ¶¶ 170-71. The officers' orders to leave Tejeda's apartment and then the area do not constitute a seizure, and there are no cases which support Urbina's argument that he was in "constructive custody." Urbina has also not alleged a violation of his right to travel, as the only plausible reading of the complaint is that the officers acted reasonably to diffuse a volatile situation by ordering Urbina and the others to leave the area. Further, the complaint does not plausibly allege that the officers' actions were the proximate cause of Urbina's injuries. *Post hoc* does not mean *propter hoc*. Rather, the intervening attack constituted an independent force that was not reasonably foreseeable. There are no plausible allegations that the officers knew that the Hispanic individuals were armed, the directions these individuals walked after they left the area, or even that these same individuals attacked Urbina. Claim 3 is dismissed.

## II. Failure to Protect (Claim 4)

Urbina also contends that the officers "affirmatively engaged in deliberately indifferent and reckless conduct that affirmatively placed the Plaintiffs at an increased risk to their safety, well being, and welfare." Compl. ¶ 233. He asserts that the officers had an "affirmative duty to intervene on behalf of the Plaintiffs to safeguard their well being and welfare" under the Fourteenth Amendment Due Process Clause, and violated this duty when they ordered Urbina to

leave the area in the direction where the officers "knew or should have known was the direction in which the group of Hispanic individuals had left." *Id.* ¶¶ 237-38.

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against the invasion by private actors." *DeShaney v. Winnebago*, 489 U.S. 189, 195 (1989). There are two narrow exceptions: (i) "the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim"; and (ii) "the state may owe such an obligation if its agents in some way had assisted in creating or increasing the danger to the victim." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In addition to satisfying one of those exceptions, a plaintiff must also demonstrate that the defendant's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998).

Urbina has not plausibly pleaded either exception. The "special relationship" exception requires that "the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *DeShaney*, 489 U.S. at 200. Involuntary custody is "the linchpin of the special relationship exception." *Matican*, 524 F.3d at 156. Since the officers' order to leave the area was not a seizure or custody, it certainly was not an involuntary custody necessary to trigger a duty to protect.

The "state-created danger" exception requires that the police "in some way had assisted in creating or increasing the danger to the victim." *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993). A plaintiff fails to state a claim where, although "the State may have been aware of the dangers that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Deshaney*, 489 U.S. at 201. Nor does

6

the exception apply where "[t]he most that can be said of the state functionaries . . . is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 203. Here, Urbina has not plausibly pleaded that the officers were aware of the danger by unknown assailants, let alone that they had any role in creating or encouraging it. Claim 4 is dismissed.

### III. Municipal Liability (Claim 8)

Urbina brings claims against the City of New York, alleging that the officers acted in accordance with city "policies, practices and customs" that violated the Fourth and Fourteenth Amendments. Compl. ¶ 253. He asserts that the NYPD's "broken-windows" policing strategy propels officers to make "low level, alleged quality of life offense objectively unreasonable stops, detentions and probable cause lacking arrests and to utilize unnecessary and unreasonable force associated therewith." *Id.* ¶ 208. That policy allegedly propelled the officers' unlawful conduct here and proximately caused Urbina's injuries. *Id.* ¶¶ 209-18.

To state a § 1983 claim against a municipality, a plaintiff must adequately allege that a deprivation of his constitutional rights was caused by an official policy or custom of that municipality. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (citing *Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658, 692-94 (1978)). Among other elements, a plaintiff must establish an affirmative "causal link" between the policy and the deprivation of his rights. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). "[B]efore the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory

7

practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

For the reasons described above, Plaintiff has not plausibly pleaded any constitutional harm. That alone is sufficient to defeat this claim. Further, Urbina premises his claim on a single interaction with the police, which fails to support municipal liability as a matter of law. Conclusory allegations aside, "broken windows" has no application here. Claim 8 is dismissed.

## IV. Sections 1985 and 1986 Conspiracy (Claim 9)

Urbina alleges that the officers engaged in a conspiracy to violate his constitutional rights, in violation of 42 U.S.C. § 1985; or were negligent in failing to prevent such a conspiracy, in violation of 42 U.S.C. § 1986, by engaging in race- or national origin-discriminatory practices.

To state a claim under § 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . (3) an act in furtherance of the conspiracy; (4) whereby a person . . . is deprived of any right of a citizen of the United States." *Rodriguez v. City of New York*, No. 05 cv 10682 (PKC), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). To state a claim under § 1986, a plaintiff must allege an underlying § 1985 conspiracy and "(1) defendant had knowledge of the conspiracy and its object, (2) defendant had power to prevent or aid in preventing the commission of the conspiratorial acts, and (3) defendant neglected or refused to exercise such power." *Peck v. United States*, No. 76 cv 983 (CES), 1983 U.S. Dist. LEXIS 10976, at *11-12 (S.D.N.Y. 1983).

Urbina has not adequately pleaded either claim because, again for the reasons described above, the complaint does not plausibly allege an underlying constitutional violation. Claim 9 is dismissed.

## V. Respondeat Superior (Claim 11)

Urbina asserts that the City of New York is liable for the officers' alleged constitutional violations under the doctrine of respondeat superior. Compl. ¶ 270. "In a suit under 42 U.S.C. § 1983, a municipality may not be held liable on a theory of respondeat superior." *Jeffes*, 208 F.3d at 56 (citing *Monell*, 436 U.S. at 694). Claim 11 is dismissed.

## VI. State-Law Claims (Claims 5, 10 and 12)

Urbina alleges various violations of New York State law. Compl. ¶¶ 244, 260, 273. Since the Court dismisses all of Urbina's federal-law claims, it declines to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994). Claims 5, 10 and 12 are dismissed.

## VII. Additional Claims

Urbina seeks leave to amend the complaint to plead claims for an allegedly unlawful search of Urbina's person by a female officer and use of excessive force by an officer after Urbina left the apartment building. Pl. Opp. Mem. at 4, 5. Leave to file an amended complaint as to those two claims is granted.

## CONCLUSION

The Court GRANTS Defendants' motion to dismiss. The Court GRANTS Plaintiff leave to file an amended complaint as to the two claims described above. If he so chooses, Plaintiff should file his amended pleading by February 5, 2016. If not, the Court will enter judgment and the matter will be terminated. The Clerk is directed to terminate Docket 13.

Dated: New York, New York
      January 6, 2016

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge